UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

|  |  |  |
|---|---|---|
| BRENT V. BOYD, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. JFM 10-cv-00360 |
| BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## ANSWER

Defendant Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan") responds below to the specific numbered paragraphs of the Complaint filed by plaintiff Brent Boyd ("Plaintiff" or "Mr. Boyd"). Headings from the Complaint are incorporated solely for organizational and reference purposes.

The Plan denies the allegations set forth in the introductory paragraph of the Complaint to the extent that Mr. Boyd alleges that the Plan "refuses" to pay the benefits at issue in the action.

1. Paragraph 1 of the Complaint states conclusions of law to which no response is required. If, however, a response is required, the Plan admits that Plaintiff's complaint is filed under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"); that Plaintiff seeks to recover disability benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); that the Plan provides pension, disability, and related benefits to eligible National Football League ("NFL") players and their beneficiaries; and that the Court has jurisdiction over the

subject matter of the Complaint, if at all, solely by virtue of 28 U.S.C. § 1331 and ERISA sections 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f).

2. Paragraph 2 of the Complaint states a conclusion of law to which no response is required. If, however, a response is required, the Plan admits that ERISA provides an administrative mechanism for internal appeals of benefit claim denials, but denies the remaining allegations in paragraph 2.

3. Paragraph 3 of the Complaint states a conclusion of law to which no response is required. If, however, a response is required, the Plan admits that venue is proper in this Court, if at all, solely by virtue of ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), and that the Plan is administered pursuant to a collective bargaining agreement between the NFL Players Association ("NFLPA") and the NFL Management Council ("Management Council").

## NATURE OF ACTION

4. Paragraph 4 of the Complaint states conclusions of law to which no response is required. If, however, a response is required, the Plan avers that it is an employee benefit plan within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3), and admits that Mr. Boyd is a Plan participant who seeks Football Degenerative total and permanent disability ("T&P") benefits under the terms of the Plan.

## THE PARTIES

5. The Plan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6. The Plan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint, but avers that Mr. Boyd has seven "Credited Seasons" under the terms of the Plan by virtue of his service with the Minnesota Vikings during the years 1980 to 1986.

7. Paragraph 7 of the Complaint states conclusions of law to which no response is required. If, however, a response is required, the Plan admits that it is an "employee benefit plan" within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3), that provides both pension and welfare benefits, and admits that Mr. Boyd is a "participant" in the Plan within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7).

8. The Plan admits that the Plan document provides criteria for participant vesting and benefits eligibility. The Plan denies the remaining allegations of paragraph 8 and relies on the Plan document to speak for itself.

## STATEMENT OF FACTS

9. The Plan denies the allegations in paragraph 9 of the Complaint and further avers that the documents, records, and information contained in the administrative record of Plaintiff's claim speak for themselves.

10. The Plan admits the allegations in paragraph 10 of the Complaint.

11. The Plan admits that, on or about March 10, 1997, Mr. Boyd was examined by neutral physician Peter B. Wile, M.D., who submitted written evaluations to the Plan dated March 10 and March 18, 1997. The Plan denies the remaining allegations in paragraph 11 of the Complaint and further avers that the documents and information provided by Dr. Wile, and included within the administrative record of Plaintiff's claim, speak for themselves.

12. The Plan admits the allegations in paragraph 12 of the Complaint.

13. The Plan admits that, on or around June 1, 2000, Plaintiff submitted a claim for Football Degenerative and Inactive T&P benefits under the Plan. Whether the claim was "timely" is a legal

conclusion to which no response is required. The Plan denies any remaining allegations in paragraph 13 and further avers that the information in Mr. Boyd's claim for benefits speaks for itself.

14. The Plan admits that, on or about May 29, 2000, Mr. Boyd was examined by neutral physician J. Sterling Ford, M.D., who submitted a Physician's Report dated June 5, 2000 and a narrative dated July 14, 2000. The Plan denies the remaining allegations in paragraph 14 of the Complaint and further avers that the documents and information provided by Dr. Ford and included within the administrative record of Plaintiff's claim speak for themselves.

15. The Plan admits that, on or about July 13, 2000, the Plan tabled its consideration of Mr. Boyd's claim.

16. The Plan admits that, on or about August 30, 2000, Mr. Boyd was examined by neutral physician Branko Radisavljevic, M.D., who submitted a Physician's Report dated September 15, 2000, and narrative dated August 30, 2000. The Plan denies the remaining allegations in paragraph 16 of the Complaint and further avers that the documents and information provided by Dr. Radisavljevic and included within the administrative record of Plaintiff's claim speak for themselves.

17. The Plan admits that, on or about October 12, 2000, the Plan tabled its consideration of Mr. Boyd's claim.

18. The Plan admits that, on or about January 3, 2001, the Retirement Board approved Mr. Boyd's claim for Inactive T&P benefits by mail ballot.

19. The Plan admits that, on or about January 11, 2001, the Plan tabled its consideration of Mr. Boyd's claim for Football Degenerative T&P benefits to pursue further medical evaluation.

20.     The Plan admits that, on or about March 29, 2001, Mr. Boyd was examined by neutral physician Barry Gordon, M.D., who performed a neurological and neuropsychological examination in connection with Mr. Boyd's claim for Football Degenerative T&P benefits.

21.     The Plan admits that Dr. Gordon submitted a narrative report dated April 6, 2001. The Plan denies the remaining allegations in paragraph 21 of the Complaint and further avers that the documents and information provided by Dr. Gordon and included within the administrative record of Plaintiff's claim speak for themselves.

22.     The Plan admits that, on or about April 12, 2001, the Retirement Board denied Plaintiff's claim for Football Degenerative T&P benefits. The Plan denies the remaining allegations in paragraph 22 of the Complaint and avers that the grounds and information upon which the denial was based are set forth in the administrative record of Plaintiff's claim and speak for themselves.

23.     The Plan admits the allegations in paragraph 23 of the Complaint.

24.     The Plan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, but admits that the administrative record contains information indicating that Mr. Boyd is receiving benefits from the Social Security administration, and such information speaks for itself.

25.     The Plan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint concerning Mr. Boyd's Social Security application, but admits that, on or about October 18, 2001, the Retirement Board affirmed the denial of Plaintiff's claim for Football Degenerative T&P benefits.

26.     The Plan admits the allegations in paragraph 26 of the Complaint.

27.     The Plan admits the allegations in paragraph 27 of the Complaint.  Although the court remanded the claim for consideration of a specific issue, it also indicated that "the record as a whole shows that the [Retirement] Board's decision to deny benefits is supported by substantial evidence and was reasonable."

28.     The Plan admits the allegations in paragraph 28 of the Complaint.

29.     The Plan admits that the Retirement Board denied Plaintiff's claim for Football Degenerative T&P benefits on remand, but denies the remaining allegations in paragraph 29 of the Complaint and relies on the documents contained in the administrative record of Plaintiff's claim to speak for themselves.

30.     The Plan admits the allegations in paragraph 30 of the Complaint.

31.     The Plan admits the allegations in paragraph 31 of the Complaint that, on or about May 1, 2003, the Plan again reaffirmed its denial of Plaintiff's claim for Football Degenerative T&P benefits.

32.     The Plan admits the allegations in paragraph 32 of the Complaint.

33.     The Plan admits the allegations in paragraph 33 of the Complaint.

34.     The Plan admits the allegations in paragraph 34 of the Complaint.

35.     The Plan denies the allegations in paragraph 35 of the Complaint, except that the Plan admits that, on or about July 10, 2008, Plaintiff requested reclassification of his T&P benefits to the Football Degenerative category; that the Plan's Disability Initials Claims Committee denied Plaintiff's request on or about December 17, 2008; that Plaintiff has appealed the denial; and that Plaintiff's appeal remains pending.

36.     The Plan admits receiving a narrative report and additional information from Dr. Branko Radisavljevic, M.D., on or around August 1, 2005.  The Plan denies the remaining allegations in

paragraph 36 of the Complaint and further avers that the documents and information provided by Dr. Radisavljevic and included within the administrative record of Plaintiff's claim speak for themselves.

37. The Plan admits the allegations in paragraph 37 of the Complaint concerning Plaintiff's Inactive T&P benefits, but further avers that the Committee was not asked to and did not review the question of whether Plaintiff's T&P benefits should be reclassified to Football Degenerative.

38. The Plan admits that, on or about July 10, 2008, Plaintiff requested reclassification of his T&P benefits to the Football Degenerative category. The Plan denies the remaining allegations in paragraph 38 of the Complaint and further avers that the documents and information in the administrative record of Plaintiff's claim speak for themselves.

39. The Plan admits that, on or about August 12 and November 25, 2008, Plaintiff submitted letters and other information in support of his request for reclassification. The Plan denies the remaining allegations in paragraph 39 of the Complaint and further avers that the August 12 and November 25, 2008 submissions speak for themselves.

40. The Plan admits the allegations in paragraph 40 of the Complaint and further avers that the Committee's December 22, 2008 letter speaks for itself.

41. The Plan admits the allegations in paragraph 41 of the Complaint.

42. The Plan denies the allegations in paragraph 42 of the Complaint.

43. The Plan denies the allegations in paragraph 43 of the Complaint.

44. The Plan admits that, in August 2009, Plaintiff's counsel asked to appear before the Plan in support of Plaintiff's claim for benefits, and that the Retirement Board denied his request at its August 18, 2009 meeting.

45. The Plan admits that, on or about November 19, 2009, the Retirement Board referred Plaintiff for further evaluation, and denies the remaining allegations in paragraph 45 of the Complaint.

46. The Plan denies the allegations in paragraph 46 of the Complaint.

## COUNT ONE

### (Claim for Football Degenerative T&P Benefits)

47. In response to paragraph 47 of the Complaint (which was erroneously designated as paragraph 42), the Plan incorporates by reference paragraphs 1 through 46 of this Answer.

48. In response to paragraph 48 of the Complaint (which was erroneously designated as paragraph 43), the Plan denies that Plaintiff is entitled to the relief demanded in the Complaint or to any relief whatsoever.

In addition to the foregoing responses to the allegations of the Complaint set forth in paragraphs 1 through 48 of this Answer, the Plan denies each and every allegation of fact and conclusion of law in the Complaint not otherwise specifically admitted in this Answer. Having stated its answers to the enumerated paragraphs of the Complaint, the Plan sets forth the following affirmative defenses.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The determinations of the Plan regarding Plaintiff's entitlement to benefits are supported by substantial evidence in the Plan administrative record, were neither arbitrary and capricious nor an abuse of the Retirement Board's broad discretion under the Plan, and were reasonable.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim is barred for failure to exhaust administrative remedies.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the doctrines of *res judicata* and collateral estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by limitations, the contractual limitations period, and/or laches, or is otherwise time-barred.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by his failure to satisfy conditions precedent to entitlement to the benefits he seeks.

WHEREFORE, having fully answered, the Plan prays that judgment be entered in its favor dismissing the Complaint with prejudice and awarding the Plan its costs, reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

DATED:  April 8, 2010                                             /s/ (HMA)_____
                                                                                EDWARD A. SCALLET
                                                                                Federal Bar No. 08479
                                                                                eas@groom.com
                                                                                HISHAM M. AMIN
                                                                                Federal Bar No. 15570
                                                                                hamin@groom.com

                                                                                Groom Law Group, Chartered
                                                                                1701 Pennsylvania Avenue, N.W.
                                                                                Suite 1200
                                                                                Washington, D.C.  20006
                                                                                Phone:  (202) 857-0620
                                                                                Fax:     (202) 659-4503

                                                                                Counsel for Defendant